CASTOR v. UNITED STATES (CASTOR et ux., Third Party Defendants).

No. 4899.

District Court, W. D. Missouri, W. D.

July 27, 1948.

Thomas C. Fitzgerald, of Kansas City, Mo., for plaintiff.

Richard H. Musser, U. S. Atty., of Kansas City, Mo., for defendant.

H. W. Wright, of Cherokee, Okla., for third-party defendants.

DUNCAN, District Judge.

Plaintiff instituted this action against the United States to recover the proceeds of a National Service Life Insurance Certificate No. 11,479,233 issued to Arley Olith Castor on May 22, 1943, in which plaintiff was named as the wife and beneficiary of the said Arley Olith Castor.

The insured died in Wichita Falls, Texas, on the 10th day of July 1943 as a result of self-inflicted wounds. At the time of the death of the insured the certificate was in full force and effect. The Veterans' Administration after due investigation refused to recognize plaintiff as the wife of the insured and directed that the payments be made to Ray W. Castor and Emma Castor, parents of the insured. Upon request of the United States the parents were made third-party defendants.

The matter before the Court arises on the motion of defendants for judgment on the pleadings. All of the parties have filed briefs in support of their respective positions. A pre-trial conference was held and the parties stipulated the following facts:

"1. That Helen Maxine Pettijohn and Frank William Price on and prior to September 4, 1935, were residents of St. Joseph, Buchanan County, Missouri.

"2. That on September 4, 1935 Frank William Price obtained a marriage license in Troy, Kansas, out of the presence of the plaintiff and a marriage ceremony was performed in Troy, Kansas, under said license on said date.

"3. That Pre-Trial Exhibit 1 constitutes a certified copy of the marriage record of said individuals, Frank William Price and Helen Pettijohn.

"4. It is disputed between the plaintiff and all the defendants whether or not the said plaintiff and Frank William Price did or did not live together or cohabit subsequent to the marriage ceremony, and it is likewise disputed as to the actual intent of the parties to said ceremony to live together as man and wife subsequent to said marriage.

"5. That the plaintiff and Arley O. Castor procured a license for marriage in Cleveland County, Oklahoma on June 10, 1940. That in said marriage license the plaintiff's name is given as Miss Helen Price as shown by Pre-Trial Exhibit 2. That a ceremony of marriage was performed between these two parties on June 10, 1940.

"6. That pursuant to said license a marriage ceremony was performed between the plaintiff and Arley O. Castor.

"7. That Arley O. Castor had been theretofore divorced from Juanita Castor in Oklahoma County, Oklahoma on May 18, 1940, copies of said petition, waiver and court minutes being shown as Pre-Trial Exhibits 3, 4 and 5.

"8. That the said Arley O. Castor and plaintiff thereafter lived together and cohabited from June 10, 1940 until July 10, 1943, the date of his death.

"9. That the age of Ray W. Castor is fifty-eight and of Emma J. Castor is fifty-three; that they are the father and mother of Arley O. Castor, and are residents of the State of Oklahoma.

"10. That on November 29, 1943, a decree of annulment was entered in the Circuit Court of Buchanan County, Missouri, in an action between the said plaintiff herein, Helen Maxine Price and Frank William Price.

"11. That on May 22, 1943, Certificate No. 11,479, 233 of National Service Life Insurance insuring Arley O. Castor in the amount of $10,000 became effective; that said policy is identified as Pre-Trial Exhibit 6."

The above stipulation is being considered by the Court along with the allegations of the complaint in ruling on the motion for judgment on the pleadings. However, the Court believes that under the allegations of the complaint the motion should be sustained without considering the matters stipulated.

The United States and the third-parties defendant in their motions for judgment on the pleadings insist that plaintiff at the time the certificate was issued in which she was designated beneficiary was not the wife of the insured, that this fact appears from the complaint, and that she is not entitled to the proceeds of the certificate.

Plaintiff and the insured were married on the 10th day of June 1940 in Cleveland County, Oklahoma, and thereafter lived together and cohabited until the date of the insured's death. One of the grounds upon which defendants rely in denying that plaintiff was the wife of the insured at the time of his death is that she was at that time the legal wife of Frank William Price, to whom she had been married in the State of Kansas on September 4, 1935, and from whom she had not been legally divorced, and which marriage, furthermore, had not been annulled. In her complaint in referring to the disallowance of her claim plaintiff alleges that:

"Said allowance was predicated on what was purportedly a prior lawful marriage of plaintiff to another person, valid and subsisting at the time of insured's demise. The true nature and circumstances of said prior marriage are as follows: On or about September 4, 1935, Frank William Price and plaintiff, whose name at that time was Helen Pettijohn, went from St. Joseph, Missouri, to Troy, Kansas. Helen Pettijohn was not present when the marriage license was obtained and since she was seventeen (17) years old at the time she was incapable of contracting marriage since under the laws of Kansas no license could lawfully issue to a female under the age of eighteen (18). The formalities of a marriage ceremony were arranged for the purpose of plaintiff's escaping the threatened custody of her father. Plaintiff's father, having separated from plaintiff's mother, intimidated plaintiff's mother with threats that

752

he would assume guardianship over plaintiff. At the time of the purported marriage, there was no intent by either of the parties that they would live as man and wife and, in fact, at no time subsequent to the marriage did plaintiff and Price consort and co-habit together. Plaintiff returned to live with her mother. Afterwards, but long before plaintiff married insured, plaintiff wrote to Price and told him that she intended to have said marriage stricken from the books and wanted him to sign some papers which she sent and which were prepared by her lawyer. He replied at once and told her that he would assume responsibility of having the marriage proceedings dissolved. Price has made an affidavit that he never told her anything more about the matter until the month of October, 1943, when he received a letter from her in which she asked where she could get a copy of the decree terminating the marriage ceremony, and at that time, he first apprised her that he had failed to have the aforesaid ceremony declared a nullity. In the meantime, however, Price himself had remarried and had a child born of that marriage. When the marriage was performed between the insured and plaintiff in 1940, plaintiff entered into it in the bona fide belief that the first marriage had been annulled, relying on Price's promise and upon the fact that he had remarried. It was not until after the death of insured that plaintiff learned that her first marriage had not been annulled and she thereupon, on November 29, 1943, obtained a decree of the Circuit Court of Buchanan County, Missouri, annulling the marriage which she had entered into with Price on September 4, 1935."

In her brief plaintiff contends that the marriage to Price was null and void and that the absence of intent on the part of the parties to live together and the fact that they did not live together subsequent to the marriage sustains her position. The marriage to Price was consummated in the State of Kansas, and it is with Kansas law that we are concerned in determining the validity of that marriage.

The insured had also been previously married. The admitted facts, although they do not appear in the complaint, are that the insured was granted a divorce decree from Juanita Castor in the State of Oklahoma on May 8, 1940, and that his purported marriage to plaintiff on June 10, 1940, was within the prohibitory six month period subsequent to the granting of the divorce within which remarriage was unlawful. The Oklahoma statute, R.L. 1910, Sec. 4971, Laws of 1925, Ch. 119, P. 166, Sec. 1, 12 O.S. 1941 § 1280, provides, among other things, that:

" * * * And it shall be unlawful for any person who has a living husband or wife to marry another person in any other state within six (6) months from date of decree of divorcement granted in this State and cohabit with such second husband or wife in this State during said period. It shall be unlawful in any event for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; * * *."

The other sections of the statute with respect to the subject make persons so remarrying guilty of bigamy.

Defendants contend that in view of this statute the marriage between plaintiff and deceased was void. The Oklahoma courts have held otherwise. The question was before the Supreme Court of Oklahoma in Mantz v. Gill, 147 Okl. 199, 296 P. 441, 445. In that case the Court said:

"Where a second marriage is entered into in good faith, and the parties continue to cohabit without change during and beyond the statutory six-month period of impediment, this relationship ripens into a common-law marriage. Such marriage is recognized as valid in this state by our court."

This ruling has been followed in numerous other cases. In view of this interpretation of the statute by the Oklahoma court the marriage between plaintiff and the deceased cannot be held invalid for that reason alone. There is nothing before the court to show any lack of good faith on their part; on the contrary, it is alleged without dispute that following the consummation of the alleged marriage they lived together for approximately three years. This would comply with the rule laid down in the Mantz case, supra.

Plaintiff, however, faces the more serious question of legal disability to enter into a valid marriage with Castor. The allegations of her complaint show that she had gone through a marriage ceremony with Price that had not been dissolved either by divorce or annullment at the time she went through a marriage ceremony with the deceased. The validity of this marriage to Price, like that of the one in Oklahoma to Castor, must be determined by the laws of the State where the marriage ceremony was performed. Section 23-106 of the General Statutes of Kansas, 1935, provides:

"That the probate judge of the several counties in this state, when applied to for that purpose by any person legally entitled to a marriage license, shall issue a marriage license in substance as follows: * * * Provided, No probate judge shall issue a license authorizing the marriage of any such person under age of twenty-one years, or female person under the age of eighteen years, except with the consent of his or her father, or, if he be dead or incapable, or not residing with his family, his or her mother or guardian, as the case may be, if he or she have one, which consent, if not given at the time in person, shall be evidenced by a certificate in writing subscribed thereto and duly attested: * * * *."

Section 60-1515 provides:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, the same may be declared void by the district court, in an action brought by the incapable party; * * * *."

These statutes have been construed by the Supreme Court of Kansas in Browning v. Browning, 89 Kan. 98, 130 P. 852, 853, L.R.A. 1916C, 737, Ann.Cas. 1914C, 1288. In that case the court said:

"The statute does not declare that the marriage of a minor entered into without the consent of the parent or guardian is void, and, in the absence of a provision to that effect, such legislation is construed as intended to prevent such marriages as far as possible, but not to avoid them if they are once entered into. The general acceptance of this rule is shown by the following expressions, and by the cases cited in their support: 'In nearly all of the states of the Union the marriage laws require the consent of parents or guardians before the marriage license is issued to minors, and impose penalties upon the officers issuing a license or conducting a marriage ceremony without such consent. Such statutes are merely directory and do not render void a marriage without such consent.' "

With respect to Section 60-1515 the court said:

"It is obvious that when this statute was enacted the phrase 'incapable from want of age' referred to the age of consent to marriage as fixed by the common law, since there was then no statute whatever relating to the age of the groom or bride."

In view of these constructions of the Kansas statutes the fact that plaintiff at the time of her marriage to Price was only seventeen years of age and did not have the consent of her parents did not render the marriage void.

If I correctly understand plaintiff's position in her brief, she insists that even though the question of her age may not have rendered the marriage void, the further fact that she and Price had no intention at the time of the ceremony of consummating a marriage or of being bound by it does render it void. In this connection I think we need but refer to the stipulation in which it is agreed that at the time of her alleged marriage to the deceased she was married under the name of Miss Helen Price whereas her maiden name and the name which she used in her marriage to Price was Helen Maxine Pettijohn. From this it may be assumed that she was going under her original married name. Notwithstanding plaintiff's contention now, I think no conclusion can be drawn from the allegations of the complaint, other than that plaintiff did consider the marriage to be valid and binding because it is further alleged that while she was married to the insured she consulted a lawyer concerning her marital status and had some document prepared which she sent to Price requesting, as she states in her complaint, "that she intended to have said marriage stricken

from the books and wanted him to sign some papers which she sent and which were prepared by her lawyer", and that in response to that request she was told by Price that he would "look after it". Plaintiff also alleges that she believed in good faith that her first marriage had been annulled at the time of her second marriage. What her state of mind was concerning the question of annullment is of no concern, so far as her property rights are concerned. If she were being charged with a criminal offense it might be considered in mitigation of punishment but it has nothing to do with the validity or invalidity of the marriage. After her second husband's death and apparently after the question of the status of her first marriage arose she instituted proceedings in the Circuit Court of Buchanan County and had the first marriage annulled. Her marriage in Kansas to Price was not void; it was a valid marriage until dissolved in the manner provided by law. Under the law her marriage to the insured was void. At the time of his death she was not his legal wife and therefore is not entitled under the Act to the proceeds of the certificate. The motion of defendants for judgment on the pleadings is sustained.

It is so ordered.